UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARYL JAMES ADAMCZYK, SR.,

                Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

1:18-CV-00831 (JJM)

        This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of defendant Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [9, 12].[1] The parties have consented to my jurisdiction [14]. Having reviewed the parties' submissions [9, 12, 13], this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

**BACKGROUND**

        The parties' familiarity with the 2,430-page administrative record [5] is presumed. The plaintiff filed an application for DIB on November 15, 2013. [5-2], p. 21; [5-5], p. 190. He alleged a disability beginning on June 22, 2009, the date he was injured at work when he fell from a piece of equipment. [5-2], p. 61. Plaintiff declined to file an application for Supplemental Security Income. [5-5], p. 190. Plaintiff was last insured for DIB on December 31, 2014. [5-2], p. 21. His claim was initially denied. [5-4], p. 128. Administrative Law Judge

---

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

("ALJ") Bryce Baird conducted a hearing on October 14, 2016. [5-2], pp. 21, 41. Plaintiff appeared with his attorney. Id. ALJ Baird heard testimony from the plaintiff and vocational expert David Festa. Id., pp. 41-119. During the hearing, ALJ Baird noted, and plaintiff's attorney agreed, that there was no functional assessment in the record from any treating physician. [5-2], p. 49.

A.  Post-Hearing Development of the Record

Following the hearing, ALJ Baird held the record open to further develop the evidence and permit plaintiff's attorney to submit additional evidence and briefing. [5-2], pp. 118-19; [5-6], pp. 308-09, 310, 311, 315-16. On October 19, 2016, ALJ Baird requested that Dr. Capicotto provide the Social Security Administration ("SSA") with a residual functional capacity statement, and forwarded to Dr. Capicotto a form medical source statement for that purpose. [5-6], pp. 297-307.

In addition, John Schwab, D.O. performed a consultative orthopedic examination on November 4, 2016. *See* [5-11], pp. 2402-12. Dr. Schwab submitted both a narrative report and a completed medical source statement to the SSA. Id. ALJ Baird provided plaintiff with the opportunity to review Dr. Schwab's submissions before they were entered into the record, and to make an additional submission with respect to Dr. Schwab's report. [5-6], pp. 312-14. By correspondence dated December 2, 2016, plaintiff's attorney agreed that Dr. Schwab's report could be entered into the administrative record, and argued that Dr. Schwab's opinions concerning plaintiff's ability to sit demonstrated that plaintiff was unable to perform sedentary work. Id., pp. 315-16.

Plaintiff's attorney submitted additional medical and other evidence for ALJ Baird's consideration, including a March 23, 2017 report from Dr. Capicotto. *See* [5-10], pp.

2129-36; 2137-38; 2139-44; 2145-49; 2150-2228; 2229-2400; 2413-16; 2418-24; and 2425-30. Dr. Capicotto did not return the medical source statement to the SSA or provide an opinion concerning plaintiff's functional abilities, save for the statements in his March 23, 2017 report.

On April 12, 2017, ALJ Baird issued his Notice of Decision denying plaintiff's claim. [5-2], pp. 21-40.

**B.      Functional Assessments in the Record**

Several independent medical examiners ("IMEs") examined plaintiff between August of 2009 and January of 2015 at the request of his employer's workers' compensation carrier. Anthony Leone, M.D., an orthopedic surgeon, first examined plaintiff on August 18, 2009. [5-8], p. 811. He stated that plaintiff could not return to his regular job, but "could do modified type work. No bending. No twisting. No overhead activity. No lifting, pushing, pulling, or carrying of more than 25 pounds." [5-8], p. 814. Dr. Leone examined plaintiff again on May 18, 2010. He opined that plaintiff "could return to work with restrictions; no repetitive bending, twisting, or overhead activity; no lifting, pushing, pulling or carrying of over 20 pounds." Id., p. 773.

Walter J. Levy, M.D., a neurosurgeon, examined plaintiff on February 10, 2011. Id., p. 725. Dr. Levy found that plaintiff "[s]hould currently be able to do light duty work, with a 10 lb lifting limit, avoiding frequent turning, lifting and bending, and avoiding lifting above shoulder level." Id., pp. 733-34.

Melvin Brothman, M.D., an orthopedic surgeon, examined plaintiff on May 4, 2011. He found that plaintiff "could return to work on a modified basis to avoid excessive bending or lifting over 10 pounds." Id., p. 702.

Dr. Brothman re-examined plaintiff on December 11, 2012. He stated in a form IME Report of Permanent Impairment that, with respect to plaintiff's "residual functional capacities for any work", plaintiff could sit frequently (defined as "1/3 to 2/3 of the time"). Id., p. 719. Dr. Brothman examined plaintiff a third time on September 25, 2013 and recommended surgery. He opined that plaintiff "may participate in sedentary duties," but did not comment further on plaintiff's ability to sit. Id., p. 686.

Plaintiff underwent his first spinal surgery on November 18, 2013. [5-7], pp. 393-98. Dr. Brothman examined plaintiff a fourth time on March 24, 2014. He noted plaintiff was using a cane and had a "marked loss of flexion". [5-8], p. 678. Dr. Brothman stated that plaintiff could "only return to sedentary work to avoid bending or lifting more than 10 pounds." Id.

James W. Faulk, M.D., an orthopedic surgeon, examined plaintiff on January 14, 2015 - soon after plaintiff's last insured date of December 31, 2014. Id., p. 752. Dr. Faulk found plaintiff was "able to do full time relatively sedentary minimal light duty job with no lifting over 15 pounds occasionally. He should not be doing any repetitive bending, lifting, or climbing." Id., p. 759. Dr. Faulk stated in an IME Report of Permanent Impairment that, with respect to plaintiff's "residual functional capacities for any work", plaintiff could only sit "occasionally", defined on the form as "up to 1/3 of the time". Id., p. 762.

Plaintiff had a second spinal surgery on November 9, 2015. [5-10], pp. 2227-28. Dr. Faulk re-examined plaintiff on April 13, 2016. [5-8], p. 2000. He concluded that plaintiff had a "marked-to-total (80%) degree of disability" and that "[t]he only type of work he could currently do would be a sedentary type of work, no lifting over 5 pounds, no bending, climbing, or kneeling." Id., p. 2004

John Schwab, D.O., a family medicine physician, conducted his orthopedic consultative examination on November 4, 2016. [5-11], p. 2402. Dr. Schwab opined in his narrative report that plaintiff had a "marked restriction to bending, lifting, and carrying heavy objects." Id., p. 2404. In his medical source statement, Dr. Schwab stated that, in an 8-hour work day, plaintiff could: sit up to 4 hours, but no more than 15 minutes at a time; stand up to 2 hours, but no more than 15 minutes at a time; and walk up to 2 hours, but no more than 10 minutes at a time. Id., pp. 2405-06. Dr. Schwab stated that, within a reasonable degree of medical probability, plaintiff's limitations were first present in June of 2009. Id., p. 2410.

## C. The ALJ's Notice of Decision

ALJ Baird concluded that plaintiff was not disabled from June 9, 2009 through December 31, 2014. [5-2], pp. 22, 29. He analyzed the medical and other evidence in the context of the well-settled five-step test used to determine whether a claimant is entitled to disability benefits. [5-2], pp. 22–23, *citing* 20 C.F.R. 404.1520.[2] He determined that plaintiff's severe impairments were "degenerative disc disease of the lumbar spine, status post November 2013 lumbar fusion surgery (with subsequent November 2015 removal of fusion hardware), and Stage IV chronic kidney disease". Id., p. 23.

In order to continue his analysis at steps four and five, ALJ Baird determined that, through plaintiff's last insured date, he retained the residual functional capacity ("RFC") "to

---

[2] The five steps are: 1) is plaintiff engaged in substantial gainful activity; 2) does plaintiff have a medically determinable, severe impairment or combination of impairments; 3) do plaintiff's severe impairments meet or equal the criteria of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) after determining plaintiff's residual functional capacity, can plaintiff perform his or her past relevant work; and 5) can plaintiff perform any work, considering her residual functional capacity, age, education, and work experience? *See* 20 C.F.R. §§ 404.1520, 416.920; Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

perform sedentary work as defined in 20 CFR 404.1567(a)" because plaintiff was able to, among other things, "stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday."  [5-2], p. 26.[3]

**D.     ALJ Baird's RFC Analysis**

To arrive at his conclusions of plaintiff's RFC, ALJ Baird considered the statements in the record concerning plaintiff's ability to work and his degree of disability.  He dismissed all of the statements in the record that plaintiff was "totally" disabled, or disabled to some other degree (*i.e.* "moderate" or "marked") or percentage (*i.e.* "75%" or "100%").  [5-2], p. 29.  He reasoned that "[a]ny conclusory statements assessing disability under the workers' compensation guidelines or rules were not considered as they are based upon the Workers' Compensation Board's own rules and methodology; conclusory statements assessing disability under workers' compensation guidelines or rules are not binding in this forum and represent an opinion on an issue reserved to the Commissioner".  Id.

ALJ Baird also rejected Dr. Capicotto's March 23, 2017 statement that "it is unlikely that [plaintiff] will be able to return to the work force". [5-11], p. 2430.  Dr. Capicotto did not provide any other assessment of plaintiff's functional abilities.  ALJ Baird assigned "little weight" to Dr. Capicotto's statement because "it is not supported by an appropriate or specific function-by-function assessment" of plaintiff's work-related limitations, and because it "is inconsistent with the medical evidence prior to the date last insured", including Dr. Capicotto's other reports, and with Dr. Schwab's opinion. [5-8], p. 31.

---

[3] ALJ Baird incorporated several other limitations and findings into his RFC that are not the focus of this opinion, but may be considered further by ALJ Baird upon remand.

ALJ Baird assigned "significant weight" to the functional assessments of Drs. Leone, Levy, Brothman, and Faulk "due to their expertise, their physical examinations of the claimant, and the relative consistency of their opinions with each other and the medical evidence through the date last insured". [5-2], p. 30. He also assigned "significant weight" to the opinion of Dr. Schwab for the same reasons, and because his opinion was consistent with those of Drs. Leone, Levy, Brothman, and Faulk. Id.

**E.     ALJ Baird's Reliance on the Vocational Expert's Testimony**

Finally, ALJ Baird determined that "jobs existed in significant numbers in the national economy that the claimant could have performed" through his date last insured. [5-2], pp. 32-33. In order to arrive at this conclusion, ALJ Baird relied upon the testimony of vocational expert David A. Festa. Id., pp. 21, 32-33.

**ANALYSIS**

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). It is well settled that an adjudicator determining a claim for employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. See Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Baird erred in four ways:

1. Discounting the treatment notes of Dr. Capicotto, in violation of the treating physician rule, and failing to discharge his duty to develop the record;

2. Failing to include in his RFC limitations included in the functional assessments of physicians to which he assigned significant weight, especially concerning sitting and reaching overhead, and failing to explain why he credited some opinions over others;

3. Failing to consider a closed period of disability following plaintiff's first surgery; and

4. Improperly explaining his assessment of plaintiff's testimony.

Plaintiff's Memorandum [9-1], pp. 17-33.

In response, the Commissioner argues that ALJ Baird's conclusions were supported by substantial evidence, and that he properly analyzed the available evidence, including the evidence of plaintiff's functional limitations. Further, the Commissioner argues the ALJ had no obligation to re-contact Dr. Capicotto. Commissioner's Brief [12-1], pp. 10-18.

**B.      Did ALJ Baird Err by Rejecting Dr. Capicotto's Opinion?**

A treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record". 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). [4] If the treating physician's opinion does not meet this standard, the ALJ may discount it, but is "required to explain the weight it gives to the opinions of a treating physician . . . Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating

---

[4] "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v. Commissioner of Social Security, 2019 WL 1258897, *2 n. 4. (S.D.N.Y. 2019). This claim was filed on November 14, 2013. [5-8], p. 21.

physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's medical opinion"). Plaintiff argues that ALJ Baird failed to adequately explain his rejection of two of Dr. Capicotto's statements: 1) "that the Plaintiff would be unable to return to work in March 2017"; and 2) that the Plaintiff was "100% disabled." Plaintiff's Memorandum [9-1], p. 17.

I agree that ALJ Baird was entitled to reject the conclusory statements found throughout the medical records concerning plaintiff's degree of disability (i.e. "moderate", "marked", "total", along with various percentages) made in the context of plaintiff's workers' compensation claim. *See* Taylor v. Barnhart, 83 Fed. Appx. 347 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner."); *see also* 20 C.F.R. §404.1527 (statement by a medical source that a plaintiff is "disabled" or "unable to work" are examples of "opinions on issues reserved to the Commissioner"). Accordingly, ALJ Baird was entitled to reject Dr. Capicotto's opinions concerning plaintiff's degree or percentage of disability.

Further, ALJ Baird was entitled to reject Dr. Capicotto's March 23, 2017 statement that "it is unlikely that [plaintiff] will be able to return to the work force." [5-11], p. 2430. This is a conclusory statement that may, or may not, concern plaintiff's functional capacity to work. Accordingly, ALJ Baird was entitled to reject this statement. 20 C.F.R. §404.1527.

This is not, however, a case in which rejecting a statement concerning disability from a plaintiff's treating physician renders the record devoid of opinion evidence. When an ALJ rejects the only evidence in the record concerning a plaintiff's functional abilities, he or she

has an obligation to further develop the record. Stackhouse v. Colvin, 52 F.Supp.3d 518, 521 (W.D.N.Y. 2014) ("[a]t the very least, the ALJ should have sought a conclusive determination from a medical consultant . . . given the absence of other evidence in the record by treating or examining sources specific to plaintiff's non-exertional limitations"). Here, however, there were many functional assessments in the record from IME physicians.

Moreover, the ALJ adequately discharged his obligation to further develop the record in this case. ALJ Baird attempted to obtain a functional assessment from Dr. Capicotto. [5-6], pp. 297-307. But Dr. Capicotto did not respond, except for the comment contained in the March 23, 2017 report. In addition, the ALJ ordered a consultative examination. *See* Report of Dr. Schwab [5-11], pp. 2402-10. Lastly, ALJ Baird held the record open for months before rendering his decision, and plaintiff's attorney submitted additional medical records (including Dr. Capicotto's March 23, 2017 report) and briefing. *See* [5-10], pp. 2129-36; 2137-38; 2139-44; 2145-49; 2150-2228; 2229-2400; 2413-16; 2418-24; and 2425-30.

Under these circumstances, the ALJ was entitled to reject Dr. Capicotto's conclusory statements, and adequately discharged his obligation to develop the record concerning plaintiff's functional abilities.

**C.     Is the RFC Based upon Substantial Evidence?**

However, ALJ Baird failed to identify any evidence to support his finding that plaintiff was able to sit for up to six hours during an eight-hour workday. Both the Second Circuit and the SSA recognize that the ability to sit for long periods of time is a requirement for sedentary work. See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("the concept of sedentary work contemplates substantial sitting"); *see also* Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 643 (2d Cir. 1983) ("[b]y its very nature 'sedentary' work

-10-

requires a person to sit for long periods of time"); Social Security Ruling ("SSR") 96-9P, 1996 WL 374185, *6 (1996) ("[i]f an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded"). Accordingly, "[t]he ability to sit for prolonged periods is an essential inquiry in determining whether a claimant has the residual functional capacity to perform sedentary work." Seignious v. Colvin, 2016 WL 96219, *2 (W.D.N.Y. 2016).

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order). Further, an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Id. However, in the absence of a competent medical opinion concerning a plaintiff's functional abilities, an ALJ is "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018).

"As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Nelson v. Commissioner of Social Security, 351 F. Supp. 3d 361, 366 (W.D.N.Y. 2018). Further, when an ALJ rejects an opinion from a medical source concerning plaintiff's functional abilities, he or she must explain why the opinion was not adopted. *See* Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006) ("[u]nder the Commissioner's own rules, if the ALJ's 'RFC

assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.' Soc. Sec. Ruing 96-8p (1996)").

I agree with plaintiff that ALJ Baird failed to properly support his findings concerning plaintiff's ability to sit. Plaintiff's Memorandum [9-1], pp. 22-25. ALJ Baird accorded Dr. Schwab's opinions "significant weight", but explicitly rejected his opinion that plaintiff was able to sit for only up to 4 hours in an 8-hour workday because "this sitting opinion is somewhat inconsistent with the balance of the evidence in the record, including the opinions of Dr. Leone, Dr. Levy, Dr. Brothman, and Dr. Faulk, and Dr. Schwab's own narrative medical source statement in which he did not assign any sitting limitations". [5-2], p. 30. ALJ Baird does not identify the portions of the opinions of Drs. Leone, Levy, Brothman, or Faulk that he believes are "inconsistent" with Dr. Schwab's opinion or otherwise explain the alleged inconsistency. Nor did he explain why he rejected the sitting limitations expressed by Drs. Brothman and Faulk. This was an error. "The plaintiff here is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to [his] application for benefits." Dioguardi, 445 F.Supp.2d at 297.

ALJ Baird also does not identify the portions of Drs. Leone, Levy, Brothman, or Faulk's opinions that affirmatively support his finding that plaintiff is able to sit for 6 hours in an 8-hour work day. Review of these opinions fails to settle the issue, as none of these doctors stated that plaintiff could sit for 6 hours in an 8-hour workday – an "essential" element of sedentary work. Seignious, supra.

Drs. Leone and Levy's reports are silent concerning plaintiff's ability to sit. [5-8], pp. 734, 773, 782, 814. Dr. Brothman stated in his December 11, 2012 IME Report of Permanent Impairment form that plaintiff can sit "frequently" with respect to work, defined as

"1/3 to 2/3 of the time". [5-8], p. 719. Mathematically, this indicates the plaintiff can sit up to 5.3 hours, not 6, in an 8-hour work day. Dr. Brothman is silent in his narrative reports concerning plaintiff's ability to sit. Id., pp. 702, 707, 686, 678. Dr. Faulk stated on his January 22, 2015 IME Report of Permanent Impairment form that plaintiff can sit "occasionally" with respect to work, defined on the form as "up to 1/3 of the time", or up to 2.6 hours in an 8-hour day. Id., p. 762. Dr. Faulk does not discuss plaintiff's ability to sit in his narrative reports. Id., p. 759; [5-10], p. 2004. Dr. Schwab's narrative report is similarly silent concerning plaintiff's ability to sit, notwithstanding the 4-hour limitation expressed in his medical source statement, wherein he also stated that plaintiff can sit or stand for only 15 minutes at a time, and walk for only 10 minutes at a time, without interruption. [5-11], pp. 2404, 2406.

Neither ALJ Baird nor the Commissioner[5] cite any medical opinion that supports ALJ Baird's finding that plaintiff retains the RFC to "sit for six hours in an eight-hour workday." [5-2], pp. 26, 28-31; Commissioner's Brief [12-1], pp. 15-17. However, the absence of any specific comment in the narrative reports concerning plaintiff's ability to perform an essential function of sedentary work is insufficient to satisfy the Commissioner's burden. *See* Carroll, 705 F.2d at 643 (ALJ's finding that plaintiff had the RFC for sedentary work was not supported by substantial evidence where "[t[he Secretary, who had the burden on this issue, failed to introduce any medical or other evidence, such as the testimony of a vocational expert or a consulting physician, that Carroll could hold a sedentary job").

Martin v. Shalala, 1994 WL 263818 (W.D.N.Y. 1994) is instructive. There, the plaintiff alleged disability due to a right knee disorder, a degenerative hip condition, and pain.

---

[5] In response to plaintiff's argument on this point, the Commissioner focuses on limitations related to overhead reaching and does not address plaintiff's arguments concerning the ALJ's rejection of Dr. Schwab's opinions of plaintiff's ability to sit, in favor of his own lay opinion. *See* Commissioner's Brief [12-1], pp. 15-17; Plaintiff's Memorandum [9-1], pp. 22, 24-26.

The court considered whether substantial evidence supported the ALJ's conclusion that the plaintiff retained the RFC to perform a full range of unskilled, sedentary work. Id. at *4. The only evidence in the record concerning plaintiff's ability to sit was a questionnaire completed by a physician, indicating (by checking a "no" box) that plaintiff's ability to sit was not affected by plaintiff's impairment, but failing to cite any medical findings to support that response. Id. at *3. To support his RFC determination, the ALJ stated, "nowhere in the medical evidence is there any indication that the claimant would be *unable* to meet the exertional demands of sedentary work." Id. at *4 (emphasis added by court). The court found that the absence of evidence did not satisfy the Commissioner's burden of proof, because "[o]ne does not, of course, sustain a burden of proof by pointing to an absence of proof supporting an adversary's position. But more importantly, this statement highlights the ALJ's failure to *introduce* specific medical evidence that the plaintiff could hold a sedentary job." Id.

Although the ALJ in Martin did not cite any medical evidence in support of his RFC, the court nonetheless reviewed the medical evidence in the administrative record and found it insufficient to support the ALJ's findings concerning plaintiff's ability to sit for long periods of time. Finding Carroll, supra, controlling, the court held that "the record as a whole does not provide the 'substantial evidence' that 'a reasonable mind might accept as adequate to support [the] conclusion' . . . that the Secretary has met her burden to show that the plaintiff has the ability to sit for the prolonged periods necessary to perform a full range of sedentary activities." Id. at *5, *quoting* Carroll, supra.

Here, the medical evidence relied upon by ALJ Baird to support his finding on sitting is similarly deficient. None of the opinions cited by ALJ Baird that comment on plaintiff's ability to sit state that plaintiff can sit for 6 hours out of an 8-hour day. The remaining

reports cited by the ALJ are silent on the issue and there is no evidence that those doctors were asked to provide such an opinion. The absence of a statement concerning a limitation does "not express an opinion as to whether the claimant *could* perform all the activities and exertions necessary for sedentary employment." Martin, 1994 WL 263818, *5. Accordingly, as in Martin and Carroll, the record lacks substantial evidence that the plaintiff could sit for the number of hours necessary to perform sedentary work.

**D.  Did the ALJ Satisfy the Commissioner's Burden of Proof to Show Jobs Existed in the National Economy that Plaintiff Could Have Performed?**

"It is bedrock Social Security law that the responses of a vocational expert are relevant only to the extent offered in response to hypotheticals that correspond to medical evidence of record." Dioguardi, 445 F.Supp.2d at 298. ALJ Baird proposed hypotheticals to the vocational expert that presumed a plaintiff with "no limitations on sitting". Transcript of Hearing [5-2], pp. 106-08. Mr. Festa testified that such an individual could perform jobs in the economy, including "surveillance system monitor", "order clerk, food and beverage", and "charge account clerk". Id., p. 108. ALJ Baird adopted this testimony in his decision. [5-2], pp. 32-33. However, because ALJ Baird's hypothetical presumed a flawed RFC, Mr. Festa's testimony cannot satisfy the Commissioner's burden of proof. *See* Dioguardi, 445 F.Supp.2d at 299 ("[p]ortions of the vocational expert's testimony that the ALJ adopted in her decision do not provide substantial evidence that plaintiff can perform work in the national economy. This is because the ALJ did not address substantial functional impairments identified by physicians whose opinions were given great weight when she posed hypothetical questions to the vocational expert. . . . Having failed to produce reliable evidence, the Commissioner failed to meet her burden at step five of the sequential analysis").

Accordingly, this matter is remanded to the Commissioner for a proper analysis of claimant's RFC, especially with reference to plaintiff's ability to sit and for how long, and further analysis concerning plaintiff's ability, through his date last insured, to perform sedentary work that existed in the national economy. See Ferraris v. Heckler, 728 F.2d 582, 587 (1984). Because this matter is remanded for further analysis and evaluation, I do not reach the parties' remaining arguments concerning additional limitations found in the medical evidence, consideration of a closed period of disability, or the ALJ's analysis of the plaintiff's testimony. Discussion of these issues here would be premature. ALJ Baird's analysis of these issues may be affected by any new findings or analysis following remand. [6]

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [9] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied. Accordingly, the Commissioner's motion for judgment on the pleadings [12] is also denied.

**SO ORDERED**.

Dated: March 17, 2020

    /s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

---

[6] See, e.g., Hardy v. Commissioner of Social Security, — F.Supp.3d —, 2020 W.L. 392040, *7 (S.D.N.Y. 2020) ("[a]s to the other arguments challenging the evaluation of her subjective symptoms, . . . we do not believe it necessary to address them here inasmuch as they may be affected by any new findings or analysis following remand"); Webb v. Colvin, 2013 WL 5347563, *6 (W.D.N.Y. 2013) ("[r]esolution of the issues discussed above may affect Plaintiff's remaining contentions, therefore further comment at this time would be premature").